```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTIAN R. HYLDAHL,              :     CIVIL ACTION
                                   :     NO. 14-3918
        Plaintiff,                 :
                                   :
    v.                             :
                                   :
JANET DENLINGER, et al.,           :
                                   :
        Defendants.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              August 28, 2015

Plaintiff Christian Hyldahl ("Plaintiff") filed a claim of wrongful use of civil proceedings against Defendants Janet Denlinger and Endre Balazs ("Defendants") under the Dragonetti Act, 42 Pa. C.S. §§ 8351-54, asserting that Defendants filed an allegedly "false and defamatory" arbitration action against Plaintiff with the Financial Industry Regulatory Authority ("FINRA"). Avowing the legitimacy of their claims and conduct before FINRA, Defendants have moved for summary judgment. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

    A.  <u>Lost Archstone Investment</u>

Defendants are a retired married couple from Fort Lee, New Jersey. <u>See</u> Am. Compl. ¶¶ 2-4, ECF No. 17. Plaintiff is an investment advisor and manager residing in Lafayette Hill, Pennsylvania. <u>See</u> <u>id.</u> ¶¶ 1, 6.

Defendants first met Plaintiff in 2002, when he was employed at the Stanley-Laman Group ("SLG") and helped manage their investment portfolio. Mot. Summ. J. 4, ECF No. 33. After Plaintiff's departure from SLG--which, unbeknownst to Defendants, was apparently acrimonious and spawned litigation, <u>id.</u>; <u>see, e.g.</u>, <u>Stanley-Laman Group, Ltd. v. Hyldahl</u>, 939 A.2d 378 (Pa. Super. Ct. 2007)--Plaintiff established the hedge fund Archstone Investment Partners, LP ("Archstone"), and encouraged Defendants to make him their investment advisor, which Defendants did to the tune of $1.05 million. Mot. Summ. J. 4-5.

By September 2008, nine months after their investment in Archstone, Defendants' investment had declined to $750,000; in early 2009, it dropped to $500,000; in April 2010, the balance was reduced to $137,000; and ultimately, Defendants lost the whole of their investment. <u>Id.</u> at 5-6. According to

---

[1] The facts concerning whether the arbitration proceedings terminated in Plaintiff's favor--the issue at the heart of this motion--are either uncontested or, if contested, viewed in the light most favorable to the nonmoving Plaintiff.

Plaintiff, the loss was "[d]ue to the downturn in the economy, and the extraordinary decline of the financial markets," as well as "the high cost of defending against [a] frivolous and defamatory lawsuit." Am. Comp. ¶¶ 18-19.

B. <u>FINRA Arbitration Proceedings</u>

Defendants commenced arbitration proceedings in July 2010 against both Plaintiff and Morgan Stanley[2] before FINRA, alleging claims of (1) misrepresentation and omission, (2) unsuitability, and (3) failure to supervise. Id. ¶ 24; see Mot. Summ. J. Ex. 13, FINRA Statement of Claims 8-11.

After three years of arbitration proceedings, Defendants "decided to end an increasingly ugly battle." Mot. Summ. J. 3. According to Defendants, "[t]he matter ended after Morgan Stanley settled with Defendants, and [after Plaintiff] admitted in correspondence that he had no assets to recover and exhibited strange and menacing behavior." Id. Defendants asked

---

[2] According to Defendants, Plaintiff introduced three Morgan Stanley employees as part of his investment team and assured Defendants that Morgan Stanley would oversee Plaintiff's management of their investments. Mot. Summ. J. 4-5. Defendants claim that after they lost their investment they learned that Morgan Stanley had not in fact overseen their investment with Archstone; accordingly, they initiated the arbitration proceedings against both Plaintiff and Morgan Stanley. Id. at 6. Although Plaintiff denies misrepresenting Morgan Stanley's involvement with Archstone, his own emails reveal that Morgan Stanley employees were involved as a "show of force" during his pitch to Defendants. See Mot. Summ. J. Ex. 1, Email from Christian Hyldahl Email to Matthew Hyldahl, et al. (Jan. 28, 2007, 2:29 p.m.); id. Ex. 2, Email from Christian Hyldahl Email to Bill Grous, et al. (Mar. 19, 2007. 4:43 p.m.).

3

the FINRA arbitrators to dismiss the arbitration proceedings, and, over Plaintiff's objections, both Defendants' claims and Plaintiff's counterclaim for defamation were dismissed. Id.

    C.   The Instant Action

Plaintiff responded with this civil suit, asserting that Defendants brought the claims before FINRA "to threaten Plaintiff's ability to work and, thus[, to] extort monies from Plaintiff." Am. Compl. ¶ 45. According to Plaintiff, "Defendants knew that the mere filing of the FINRA Lawsuit [sic] would act as a blight on Plaintiff's record which would discourage other investors, professionals and potential employers from wanting to deal with him in any professional capacity." Id. ¶ 50.

In February of 2014, Plaintiff filed a complaint in the Philadelphia Court of Common Pleas, and Defendants removed the action to this Court on June 25, 2014, based on diversity jurisdiction. ECF No. 1. Plaintiff's original three-count complaint alleged claims of (1) malicious prosecution (construed by the Court as a claim of wrongful use of civil proceedings), (2) abuse of process, and (3) tortious interference with contract. After a hearing on Defendants' first motion to dismiss, ECF No. 5, the Court dismissed the first two counts without prejudice and the third with prejudice, ECF No. 15.

On December 24, 2014, Plaintiff filed an Amended Complaint, bringing a claim of wrongful use of civil proceedings.

4

ECF No. 17. Defendants then filed a motion to dismiss Plaintiff's Amended Complaint on January 21, 2015. ECF No. 20. After the Court converted Defendants' motion to dismiss to a motion for summary judgment, ECF No. 31, Defendants filed a supplemental motion for summary judgment on April 20, 2015, ECF No. 33--which alleges that Plaintiff's suit is intended to "wrongly . . . punish Defendants for an arbitration that they brought for a proper purpose and with a proper motive." Mot. Summ. J. 3.

On May 27, 2015, Plaintiff filed a response to Defendants' motion for summary judgment, ECF No. 37, and on June 8, 2015, Defendants filed a reply brief in support of their motion for summary judgment. ECF No. 39.[3]

Defendants' motion for summary judgment is now ripe for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson

---

[3]   More specifically, Defendants filed a motion for leave to file a reply brief, which the Court will grant.

5

v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation; a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party--Plaintiff in this case. See Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal quotation marks omitted).

**III. DISCUSSION**

   A.   Wrongful Use of Civil Proceedings

Defendants assert that Plaintiff cannot satisfy the elements of his claim for wrongful use of civil proceedings under the Dragonetti Act, and therefore summary judgment is appropriate. To succeed on a Dragonetti claim, the plaintiff bears the burden of proving that: (1) the defendant procured, initiated, or continued the underlying civil proceeding against the plaintiff; (2) the proceedings were terminated in plaintiff's favor; (3) the defendant did not have probable cause for his

action; (4) the primary purpose behind the suit was not to secure the proper discovery, joinder of parties, or adjudication of the claim on which the proceedings were based; and (5) the plaintiff suffered damages. 42 Pa. C.S. § 8354; see also McNeil v. Jordan, 894 A.2d 1260, 1274 (Pa. 2006).

As to the first element, Defendants concede that they initiated the underlying FINRA proceeding against Plaintiff, but they argue that Plaintiff cannot establish the remaining four elements of the claim. Mot. Summ. J. 11. Plaintiff contends that "Defendants' motion should be denied because there is at least a genuine issue of material fact as to all of the elements in Defendants' motion." Pl.'s Resp. 7, ECF No. 37. However, because the Court concludes that the proceedings did not terminate in Plaintiff's favor--an essential element of Plaintiff's Dragonetti claim--the Court will confine its discussion to that element.[4]

---

[4] Plaintiff also argues that Defendants' motion was inappropriately and/or prematurely converted to a motion for summary judgment, and that "this motion should be denied, or at least deferred, in order to permit discovery because additional discovery will further illuminate issues in the motion and the case." Pl.'s Resp. 8.

Defendants' motion to dismiss was properly converted to a motion for summary judgment. See Kulwicki v. Dawson, 969 F.2d 1454, 1463 n.11 (3d Cir. 1992) ("[T]he decision to convert a motion to dismiss to a motion for summary judgment is generally committed to the district court's discretion under Fed. R. Civ. P. 56."). Summary judgment is appropriate at this stage because the parties had adequate notice that the motion was converted, as well as an adequate opportunity to present sufficient evidentiary materials for the Court to dispose of the

B.  <u>Favorable Termination</u>

Plaintiff asserts that Defendants' dismissal of the FINRA arbitration constituted a termination in his favor.

motion as a matter of law. <u>See</u> <u>Rose v. Bartle</u>, 871 F.2d 331, 341-42 (3d Cir. 1989).

Plaintiff argues that he should be afforded the opportunity to depose numerous individuals referred to in the underlying facts of this case. Pl.'s Resp. Ex. 1, Pl.'s Declaration ¶¶ 64-69. However, Plaintiff's argument that his desire for discovery precludes summary judgment fails because he does not (and cannot) show that summary judgment would be precluded by additional information. <u>See</u> Fed. R. Civ. P. 56(d); <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 139-40 (3d Cir. 1988) ("[A] party seeking further discovery in response to a summary judgment motion [is required to] submit an affidavit specifying, for example, what particular information is sought; <u>how, if uncovered, it would preclude summary judgment</u>; and why it has not previously been obtained." (emphasis added)); <u>Anderson</u>, 477 U.S. at 250 n.5, (indicating that the nonmoving party should be afforded "the opportunity to discover information that is <u>essential</u> to his opposition" (emphasis added)).

Although Plaintiff's proposed depositions might probe the validity of his personal attacks of various individuals mentioned in his filings, or perhaps might yield information related to his claimed injuries, Plaintiff has failed to show how any additional discovery would assist him in showing that the arbitration proceedings terminated in his favor. <u>See also</u> <u>Velez v. QVC, Inc.</u>, 227 F. Supp. 2d 384, 423 (E.D. Pa. 2002) (Robreno, J.) ("Although plaintiffs have identified some of the categories of discovery that they seek, they have failed to show how this discovery would be relevant to any of the issues presented in the defendant's motions for summary judgment." (citing <u>Hancock Indus. v. Schaeffer</u>, 811 F.2d 225, 229-30 (3d Cir. 1987))).

Unlike this Court's prior case of <u>Bernardi v. Apple Vacations</u>, No. 02-6664, 2003 WL 26076717, at *1-2 n.1 (E.D. Pa. June 18, 2003) (Robreno, J.) (declining to convert motion to dismiss in order to allow "additional discovery [that] might further illuminate" issues central to the motion for summary judgment), permitting Plaintiff to pursue further discovery would neither illuminate nor amend this fatal flaw in his claim.

8

Pennsylvania courts carefully consider all of the circumstances of a settlement or a withdrawal of an action before determining whether there was a "favorable termination" for Dragonetti purposes. See Rosenfield v. Pa. Auto. Ins. Plan, 636 A.2d 1138, 1142 (Pa. Super. Ct. 1994) ("Whether withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought . . . depends on the circumstances under which the proceedings are withdrawn.").

According to Plaintiff, Defendants terminated their FINRA suit against him on the eve of trial because they knew they could not win. Plaintiff asserts that, as Pennsylvania courts have recognized, "[a] last-second withdrawal or dismissal in the face of imminent defeat is not favorable to [Defendants]." Pl.'s Resp. 11 (citing Bannar v. Miller, 701 A.2d 242, 247-248 (Pa. Super. Ct. 1997)). For Plaintiff, Defendants "did not answer the bell in the fight they started, which is a victory for [Plaintiff]." Bannar, 701 A.2d at 248.

While it is true that, under certain circumstances, the withdrawal of a suit may constitute a favorable outcome on the part of the party sued, it is not inevitably so. As stated earlier, this depends upon the specific circumstances surrounding the withdrawal. And although this Court previously assumed, for the sake of argument--in granting Defendants'

9

motion to dismiss without prejudice, with leave for Plaintiff to refile his Dragonetti claim--that Plaintiff's claim as to a favorable outcome was "minimally plausible," Order dated December 15, 2014, at 5 n.1, ECF No. 15, a deeper delve at this stage of the proceedings into the circumstances surrounding the termination of the FINRA suit confirms that Plaintiff cannot show that the FINRA proceedings terminated in his favor.

Here, at the time Defendants withdrew their arbitration claims against Plaintiff, they had already settled with Morgan Stanley, the deep pocket in the case.[5] Two, Plaintiff had represented to them that he had no assets from which they could recover, even if they prevailed. Mot. Summ J. Ex. 16, Defendants' Mot. for Declination of FINRA Forum ¶ 13. And three, Defendants had received from Plaintiff a series of aggressive and unsettling communications which included: an accusation that Defendants had him followed by "thugs"; a warning that they are "walking a dangerous line," and that he was legally licensed to carry a concealed weapon; and statements that he would be pursuing all available legal channels against them, that he had nothing left to lose, and that he would "fight with a ferocity you cannot imagine if I am forced to." Id. ¶¶ 1, 3, 14, 18; Mot.

---

[5] Although Plaintiff asserts that this sum "is less than a nuisance value considering that Defendants' [sic] sought damages in excess of $1,048,725.22," Am. Compl. ¶ 55, it is a sight more than nothing--which is what Defendants could expect from prevailing in their suit against Plaintiff.

10

Summ. J. Ex. 17, Email from Christian Hyldahl to Henry Pass, et al. (Sept. 26, 2013, 4:24 p.m.). Although in his email responding to Defendants' motion for declination Plaintiff attempts to explain the context and meaning of those statements, his explanations do not change the aggressive and personally threatening tone that, on their face, pervades his communications with Defendants.

Understandably, given the circumstances, Defendants decided not to proceed in their action against Plaintiff.

The Bannar case is not to the contrary. There, the party who had initiated the action withdrew it the very day of trial, and the court found that "neither clients nor attorneys were attempting to properly adjudicate the claim." 701 A.2d at 248. Here, having spent three years embroiled in the FINRA proceedings, having recovered all that they could expect to recover from the one deep pocket in the suit, having learned of Plaintiff's allegedly dire financial circumstances, and having received numerous aggressive and disquieting communications from Plaintiff, Defendants had substantial reasons to seek discontinuance--and no motive to continue.

Accordingly, the Court finds that, based upon the undisputed facts and under the circumstances, no reasonable jury could find that the proceedings ended in Plaintiff's favor.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. An appropriate order follows.